Edgar Henry SMITH, Plaintiff-Appellant,

v.

LLOYD'S OF LONDON,
Defendant-Appellee.

No. 77-2032
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

March 1, 1978.

---

* Rule 18, 5 Cir.; *see Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

S. Ralph Martin, Jr., Atlanta, Ga., for plaintiff-appellant.

Edward E. Dorsey, Daryll N. Love, J. Alex Rue, Atlanta, Ga., for defendant-appellee.

Before COLEMAN, GODBOLD and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

The appellant Edgar Henry Smith, appeals from an order of the United States District Court for the Northern District of Georgia dismissing his complaint against the appellee, Lloyd's of London (Lloyd's), for want of jurisdiction over the person of Lloyd's and for insufficiency of service of process.[1] Finding that the district court correctly dismissed this diversity action on those grounds, we affirm.

In 1972, while living in Sweden, the appellant obtained an "All Risks Insurance Policy" to protect certain items of valuable jewelry.[2] He procured the policy through an insurance broker in Denmark, who in turn procured it from a broker in England. The English broker placed it with a Lloyd's

---

1. The complaint was dismissed pursuant to Fed.R.Civ.P. 12(b)(2) and 12(b)(5).

2. This policy provided primary and exclusive coverage on the jewelry involved here.

underwriting syndicate,[3] Syndicate No. 404. Lloyd's, or perhaps more precisely the syndicate, is represented in this case by its agent, Anthony Charles Vanier Harden of London.

■ To color the geographical picture more vividly, the appellant traveled to Italy in 1973, where he apparently suffered the theft of valuable jewelry covered by the all-risks policy. The appellant notified his insurer of the loss, but a settlement was not reached. In April 1974, the appellant commenced suit against Lloyd's in England. Shortly thereafter, the appellant moved to the State of Georgia, and the proceedings in England were abandoned. Once in Georgia, he instituted suit against Lloyd's in the court below (the action was independent of and preceded the one now before us) and sought to obtain personal jurisdiction over Lloyd's by serving process on the W. K. Stringer Company (Stringer), an insurance company in Tucker, Georgia. Stringer brokered surplus lines insurance through a London broker that did business with certain underwriters at Lloyd's. This suit was dismissed for lack of personal jurisdiction over the named defendant, Lloyd's, because it was not properly served; the district court found that Stringer was not an agent of Lloyd's. Soon afterwards, appellant instituted the present proceedings, but this time he attempted to obtain jurisdiction over Lloyd's by serving the Insurance Commissioner of the State of Georgia. Appellant contended below, as he does now, that certain Georgia long-arm statutes permitted such substituted service and operated to bring Lloyd's within the jurisdiction of the district court.[4]

■ Under Fed.R.Civ.P. 4(d)(7), a federal court may exercise in personam jurisdiction over a foreign defendant if the state in which the district court is situated has an *appropriate* long-arm statute.[5] By appropriate we mean that the statute relied upon was designed to apply in the context in which it is invoked and that its application in the given case is fair. *See Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958); *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957); *International Shoe Co. v. State of Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945). The district court determined that none of the Georgia statutes relied upon by the appellant were susceptible to a construction that would place Lloyd's within their intended scope and therefore within the court's jurisdictional reach. We agree.

■ The appellant relied on three Georgia long-arm statutes in an effort to subject Lloyd's to the district court's jurisdiction: Ga.Code Ann. §§ 56–626, 56–1203, and 56–1204 (1977).[6] As the district court properly

---

3. Lloyd's of London is not an insurance company in the general sense. Rather, it is an exchange or a market where various individuals or groups bid on the right to insure a given risk. *See* Antony Brown, *Lloyd's of London* (1974).

4. The appellant also advanced the notion that Lloyd's through Harden, issued a policy of insurance in which it consented to suit anywhere in the United States. The district court found, as a factual matter, that no such consent to suit clause was contained in or could be inferred from the contract of insurance. We affirm the district court's finding in this regard because it has not been shown to be clearly erroneous.

5. Rule 4(d)(7) provides:
   It is also sufficient if the summons and complaint are served [upon] . . . [a domestic or foreign corporation] . . . in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state.

6. The statutes relied on by the appellant are the following:
   1) Ga.Code Ann. § 56–626, which provides: Service of process
      (1) An unauthorized insurer shall be sued, upon any *cause of action arising in this State under any contract issued by it as a surplus line contract* pursuant to this Chapter, in the superior court of the county in which the cause of action arose.
      (2) Every unauthorized insurer *issuing or delivering a surplus line policy through a surplus line broker in this State* shall be deemed thereby to have appointed the commissioner as its attorney for acceptance of service of all legal process issued in this State *in any action or proceeding arising out*

concluded, section 56–626 applies only to surplus line contracts, and the policy in suit is neither a surplus policy nor one issued through a surplus line broker in Georgia. Consequently, section 56–626 is of no value to the appellant in this case.

■ Section 56–1203 is also insufficient to confer in personam jurisdiction over Lloyd's in this action. This section patently applies only to insurance companies authorized to do business in Georgia, and it is clear from the record that Lloyd's is not such a company. Even if it were considered to be so, in personam jurisdiction would still be lacking because substituted service lies only in an "action arising from [the insurance company's] transaction of business in this State." As our depiction of the facts indicates, the district judge correctly determined that the claim in this case

was in no way related to an insurance transaction in the State of Georgia. The insurance policy was neither issued nor delivered in Georgia. Moreover, the policy was neither solicited, procured, nor paid for within the United States. The loss occurred in Italy. No aspect of appellant's claim falls within the ambit of this statute.[7]

■ The final long-arm provision relied on by the appellant has no application here. Section 56–1204 establishes long-arm jurisdiction over any insurance company that, having done business in Georgia, withdraws from the state and leaves behind outstanding obligations. Lloyd's does not fall into this category.

The judgment of the district court, for the reasons we have stated, is accordingly

AFFIRMED.

*of such policy*, and service of such process upon the commissioner shall be lawful personal service upon such insurer.

. . .

(Emphasis supplied.)

2) Ga.Code Ann. § 56–1203, which provides: Service of process; alien or foreign insurers Each authorized alien or foreign insurer shall make the following appointments for service of process:

(1) Each such insurer shall file with the commissioner a power of attorney appointing a person who is a resident of this State to receive service of legal process issued against it in Georgia *upon any cause of action arising from its transaction of business in this State.*

. . .

(2) Each such insurer shall appoint the commissioner as its attorney to receive service of legal process issued against it in Georgia *upon any cause of action arising from its transactions of business in this State.* Such appointment shall be irrevocable, shall bind any successor and shall remain in effect as long as there is in force in Georgia any contract made by the insurer or obligations arising therefrom. . . . (Emphasis supplied.)

3) Ga.Code Ann. § 56–1204, which provides: Service of process on commissioner

(1) In addition to other methods of service provided by law, a foreign or alien insurer may be served with legal process by service of duplicate copies thereof on the agent for service designated under the preceding section or upon the commissioner. At the time of service the plaintiff shall pay the commissioner $2, taxable as cost in the action. *Upon receiving such service the commission-*

*er shall promptly forward a copy thereof by registered mail to the person last so designated by the insurer to receive the same.*

(2) Process served upon the commissioner and copy thereof forwarded as in this section provided, *shall constitute service thereof upon the insurer so long as it shall have any obligations or liabilities outstanding, although such company may have withdrawn, have been excluded from, or have ceased to do business in this State.* (Emphasis supplied.)

7. The appellant suggests that the mere presence of insurance agents in Georgia who deal with Lloyd's and Lloyd's acceptance of risks in the state render Lloyd's amenable to service through § 1203. Even were we not thoroughly convinced that the scope of § 1203 does not reach the present situation, it is highly questionable whether its application, in light of the paucity of contacts between Lloyd's and appellant in this case, would be constitutional. *Cf. McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957) (stressing that the mailing of premiums from and the policy delivery to the forum state were, in the absence of more direct contacts, essential to the constitutionality of the long-arm statute at issue). More recently, in *Shaffer v. Heitner*, 433 U.S. 186, 97 S.Ct. 2569, 53 L.Ed.2d 683 (1977), the Supreme Court suggested that the liberal construction placed on the words "traditional notions of fair play" in a due process context may be evolving into a more conservative one, requiring, perhaps, even more contacts than those present in *McGee*.