The NORTHERN TRUST COMPANY,
an Illinois corporation,
Plaintiff–Appellant,

v.

BUNGE CORPORATION, a New York
corporation, Defendant–Appellee.

No. 88–2595.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 16, 1990.

Decided March 30, 1990.

Rehearing and Rehearing En Banc Denied
May 25, 1990.

Mark A. Rabinowitz, Stephen C. Sandels, McDermott, Will & Emery, Chicago, Ill., for plaintiff-appellant.

Stephen R. Patton, Jonathan B. Newcomb, David T. Erie, Kirkland & Ellis, Washington, D.C., for defendant-appellee.

Before CUMMINGS and EASTERBROOK, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

In this action to construe the coverage of a warranty in a Stock Purchase Agreement the district court entered a judgment for $648,000 plus prejudgment interest in favor of the purchaser of the stock, the Bunge Corporation ("Bunge"). After determining that diversity jurisdiction in this case must be satisfied on the basis of the citizenship and the amounts in controversy of the individual sellers of the stock and not that of their appointed representative, we hold that the district court was without subject matter jurisdiction to entertain this suit. We therefore vacate the judgment of the district court and dismiss the suit without prejudice.

## I. Factual Background

On October 5, 1978, Bunge entered into a Stock Purchase Agreement (the "Agreement") under which it purchased all of the shares of the Lauhoff Corporation ("Lauhoff") from Lauhoff's 77 shareholders. The Agreement includes various warranties among which is one that Lauhoff owned or was permitted to use under license "all formulae, secret processes, know-how, patents, patent applications, trademarks, trade names and copyrights" in use at the time of the sale of the shares. The Agreement also provides that the purchase price of the shares will be adjusted on a pro rata basis for, *inter alia,* "any liabilities of or claims" arising out of the breach of any of the warranties. In other words, the Agreement contemplates a per share adjustment in the sales proceeds in the event that a breach in a warranty causes the value of the shares in Bunge's hands to be lower than anticipated. Finally, the Agreement provides that each of the individual shareholders of the Lauhoff stock "appoints the Northern Trust Company, Chicago, Illinois, as the Seller's true and lawful agent and attorney with respect to all matters arising in connection with this agreement * * *." The Northern Trust Company ("Northern") is listed in the Agreement as the party to receive, on behalf of the sellers, any "notices, requests, instructions, or other documents" pursuant to the performance of the Agreement.

By letter dated May 6, 1981, the Ralston Purina Company ("Ralston") notified Lauhoff, which had then been owned and operated by Bunge for over two years, that Lauhoff had for some years been infringing one of Ralston's patents, and that Ralston intended to prosecute. Bunge

promptly sent a copy of this letter to Northern advising that the Ralston action might give rise to a purchase price adjustment under the Stock Purchase Agreement. Ralston filed an action against Lauhoff on November 4, 1985, and Lauhoff settled the suit on May 9, 1986, by paying Ralston $1.2 million. Bunge invited Northern to participate in the settlement negotiations but Northern declined.

On May 22, 1986, Bunge wrote to Northern demanding $648,000, pursuant to the price adjustment provision in the Agreement.[1] Shortly thereafter, on July 2, 1986, Northern, acting in its capacity as agent and attorney for the sellers, filed a complaint in federal district court seeking a declaration that the purchase price adjustment provision of the Stock Purchase Agreement did not entitle Bunge to be reimbursed by the former Lauhoff shareholders for the Ralston settlement. The complaint recited that federal jurisdiction was based on diversity, Bunge being a corporation organized under the laws of the State of New York with its principal place of business in New York and Northern being a corporation organized under the laws of the State of Illinois with its principal place of business in Illinois, and the amount in controversy being in excess of $10,000. Bunge immediately filed a counterclaim against Northern, "as representative of Sellers under the Stock Purchase Agreement," asserting breach of the warranty contained in the Agreement and requesting a refund of $648,000 of the purchase price of the shares.

After eighteen months of discovery and extensive briefing the district judge resolved cross-motions for summary judgment in favor of Bunge and against Northern. On May 23, 1988, the district judge entered a final judgment against Northern in the amount of $648,000, together with prejudgment interest at the Illinois statutory rate. On June 7, 1988, Northern filed

a motion to alter or amend judgment seeking a declaration that Northern was not liable for the judgment in its individual capacity. In a Memorandum Opinion and Order dated July 29, 1988, the district judge denied Northern's motion to alter or amend the judgment, concluding that "any judgment entered against Northern in its individual capacity is proper and will eventually be satisfied by the individual sellers who will indemnify Northern for the purchase price refund * * *."

Northern has appealed from the district judge's grant of summary judgment to Bunge on the merits and the district judge's denial of Northern's motion to alter or amend the judgment. At oral argument before this Court the panel inquired whether one or more of the sellers of the Lauhoff stock may have had a common domicile with Bunge in New York at the time the suit was filed, and whether such a common domicile would preclude diversity jurisdiction in this case. The Court then requested that both parties file supplemental briefs to address that question. In these supplemental briefs the parties have each argued that federal jurisdiction was proper. We are not persuaded by those arguments and accordingly we must dismiss this case for lack of subject matter jurisdiction.

## II. Jurisdiction

The federal courts are courts of limited jurisdiction. *Bender v. Williamsport Area School District,* 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). Federal jurisdiction here has been premised on diversity of citizenship. The current version of the diversity statute restricts federal jurisdiction to "all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between (1) citizens of different states * * *." 28 U.S.C. § 1332.[2] In *Strawbridge v. Curtiss,* 3

---

**1.** The Agreement provides for an adjustment equal to the amount of liability for breach of any warranty less 46% in those cases in which the loss was tax-deductible. The $1.2 million settlement was tax-deductible, hence Bunge's de-

mand was $1.2 million less 46% of $1.2 million, or $648,000.

**2.** For suits filed prior to May 18, 1989, the required amount in controversy was $10,000. Because Northern's original declaratory judg-

Cranch 267, 2 L.Ed. 435 (1806), the Supreme Court held that the diversity requirement is satisfied only if there is "complete diversity" among the plaintiffs and the defendants.

Determining whether complete diversity exists in a lawsuit between two individuals is generally straightforward. When a lawsuit involves groups of individuals or parties representing groups of individuals, however, the determination is more complicated. This is because such suits require a determination of which entities can be considered citizens for diversity purposes, and also whose citizenship is pertinent in testing diversity. The Supreme Court has established that the relevant citizens for diversity purposes must be "real and substantial parties to the controversy." *Navarro Savings Association v. Lee,* 446 U.S. 458, 460, 100 S.Ct. 1779, 1781, 64 L.Ed.2d 425 (1980), citing *McNutt v. Bland,* 2 How. 9, 15, 11 L.Ed. 159 (1844); *Marshall v. Baltimore & Ohio R. Co.,* 16 How. 314, 328–329, 14 L.Ed. 953 (1854); *Coal Co. v. Blatchford,* 11 Wall. 172, 177, 20 L.Ed. 179 (1871).

■ As a result, it has generally been held that federal courts must look to the individuals being represented rather than their collective representative to determine whether diversity of citizenship exists. For example, two provisions of the diversity statute, one long-standing and the other applicable to all civil suits filed on or after May 18, 1989, require the courts to look to represented parties to determine if diversity is satisfied. The long-standing provision, 28 U.S.C. § 1332(c)(1), establishes that in direct actions against insurers—whether incorporated or unincorporated—in which the insured is not joined as a party-defendant, such insurers are deemed to be citizens of the same state as their insureds, as well as the state in which they are incorporated and the state in which they have their principal place of business. For suits filed on or after May 18, 1989, legal representatives of estates of decedents, infants, or incompetents are deemed to be citizens of the same state as the decedents, the in-

ment action was filed on July 2, 1986, the $10,-

fants, or the incompetents. 28 U.S.C. § 1332(c)(2). In addition to these statutorily mandated instances, partnerships and limited partnerships are not considered citizens of any state for diversity purposes. *Great Southern Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900) (partnership); *Carden v. Arkoma Associates,* —— U.S. ——, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (limited partnership). Consequently, in cases involving such unincorporated business associations the relevant citizenship is that of the individual partners. *Id.*

■ There are, however, exceptions that allow the citizenship of a single individual or entity to provide the basis for complete diversity for an entire group of interested individuals. For example, corporations have the status of citizens and they are deemed to be citizens of the state in which they are incorporated and of the state in which they have their principal place of business. 28 U.S.C. § 1332(c)(1). Shareholders who bring derivative suits can establish diversity based on their own citizenship even though they are suing on behalf of the corporation. Fed.R.Civ.P. 23.1; *Doctor v. Harrington,* 196 U.S. 579, 25 S.Ct. 355, 49 L.Ed. 606 (1905). Similarly, members of a class in a class action are deemed to have the same citizenship as that of the class representative. Fed.R.Civ.P. 23(a); *Snyder v. Harris,* 394 U.S. 332, 340, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319 (1969). In addition, trustees of express trusts who have legal title to trust property and who sue in their own names can establish diversity based on their own citizenship rather than that of the trust's beneficiaries. *Navarro Savings Association v. Lee,* 446 U.S. 458, 100 S.Ct. 1779; *Goldstick v. ICM Realty,* 788 F.2d 456, 458 (7th Cir.1986).

■ In its capacity as representative of the sellers of the Lauhoff stock, Northern does not fall into any of these recognized exceptions. Although the Northern Trust Company is a corporation, Northern in its capacity as a representative is a distinct entity. The statutory provision that en-

000 figure governs this case.

titles a corporation to participate in a suit in federal court based on the corporation's own citizenship is grounded in the notion that the corporation's shareholders are deemed to be citizens of the state in which the corporation is incorporated. *Marshall v. Baltimore & Ohio R. Co.*, 16 How. 314, 328, 14 L.Ed. 953 (1854). Thus the statute is designed to cover those suits in which the interest of the corporation's own shareholders may be affected because of some impact on the corporation's net assets. In initiating this lawsuit Northern did not seek to protect any interest of its own shareholders. Rather, Northern sought to fulfill its fiduciary duties as an agent for the sellers of the stock of the Lauhoff corporation. In the eyes of the law a person who sues or is sued in a representative capacity is distinct from that person in his individual capacity. *Alexander v. Todman*, 361 F.2d 744, 746 (3d Cir.1966). This is no less true where the "person" suing is a corporation. Accordingly, the fact that the Northern Trust Company, an Illinois corporation, is deemed a citizen of Illinois for diversity purposes in suits affecting the interests of its own shareholders does not mean that it will be deemed a citizen of Illinois in its capacity as an agent representing the interests of others.

This action does not fall within the exception for corporations, and neither does it qualify as a derivative suit or a class action. Similarly the argument that this case is controlled by *Navarro* is to no avail. *Navarro* merely holds that trustees who have legal title to trust property and who sue in their own names are the proper parties to consider in testing diversity. Here Northern has not sued in its own name nor does Northern have legal title to any property that is the subject of this suit.[3] Since Northern in its capacity as representative of the sellers of the Lauhoff stock does not fit any of the exceptions to the general policy of testing diversity by the citizenship of the parties represented rather than the citizenship of the representative, the diversity determination in this case must focus on the individual sellers of the Lauhoff stock.

This conclusion is consistent with Seventh Circuit precedent. In the recent case of *National Association of Realtors v. National Real Estate Association, Inc.*, 894 F.2d 937 (1990), the National Association of Realtors (NAR) brought suit in federal court on behalf of its members, charging the National Real Estate Association with fraud in connection with its sale of malpractice insurance to NAR members. The suit was neither a derivative suit nor a class action, and NAR conceded that no injury to its own property had occurred. This Court therefore affirmed the district court's determination that complete diversity could not exist if any of NAR's individual members was a citizen of the same state as the defendant. Similarly, in its capacity as a representative, Northern has no property interest of its own at stake. Only the individual sellers of the Lauhoff stock will be affected by a resolution of the coverage of the sellers' warranty in the Stock Purchase Agreement.

Contrary to the assertion of Bunge in its supplemental jurisdictional brief, this Court's decision in *F. & H.R. Farman–Farmaian Consulting Engineers Firm v. Harza Engineering Co.*, 882 F.2d 281 (1989), does not support the argument that Northern's corporate citizenship is determinative for jurisdictional purposes in this case. In *Harza* the plaintiff, Mr. Farman–Farmaian, was a former shareholder and managing director of an Iranian corporation that was expropriated during the Iranian Revolution. He brought suit on behalf of himself and other former shareholders to recover a debt that was owed to the Iranian corporation by a United States corporation. This Court held that complete diversity could be established with reference to Mr. Farman–Farmaian's citizenship alone rather than that of all of the former owners of the corporation's stock. This holding was based, however, on the principle that expropriated corporations continue

---

**3.** It is true that Northern is also a trustee for the proceeds of the sale of sixty percent of the Lauhoff stock. Northern in its capacity as trust-

ee is not, however, before this Court any more than the Northern Trust Company in its individual capacity is before this Court.

to exist for purposes of United States suits, and that such suits may be prosecuted in the name of a representative "in order to obviate disputes over the corporation's capacity arising from the ambiguous status created by the expropriation." *Id.* at 285 (citations omitted). Thus *Harza* is merely an example of a suit by a corporation to recover a debt owed to the corporation. It is undisputed that the Lauhoff Corporation is now a wholly owned subsidiary of Bunge. Thus, it is not possible to characterize Northern's declaratory judgment action as a suit by the Lauhoff Corporation. Nor is it possible to characterize Bunge's counterclaim as a suit against the Lauhoff Corporation. *Harza* is therefore inapposite.

Both parties' supplemental jurisdictional briefs argue that *Bullard v. Cisco,* 290 U.S. 179, 54 S.Ct. 177, 78 L.Ed. 254 (1933), supports the proposition that complete diversity can be established with reference to Northern's citizenship alone. In *Bullard,* numerous owners of municipal bonds appointed a committee to bring a federal action against the issuer of the bonds. The Supreme Court held that the citizenship of the committee members was determinative for diversity purposes and that the face amounts of the individual bonds could be aggregated to establish the requisite amount in controversy. This holding was dependent upon the Supreme Court's characterization of the arrangement as an "express trust," in which legal title to the bonds was transferred to the committee. *Id.* at 190, 54 S.Ct. at 181. *Bullard* is therefore distinguishable from the present case in the same manner as *Navarro.* As previously noted, Northern in its capacity as representative does not hold legal title to any property.

Having determined that the relevant citizenship for diversity purposes in this case is that of the individual sellers of the Lauhoff stock, it remains to determine whether these sellers meet the requirements of the diversity statute. Jurisdiction depends on the facts in existence at the time the suit was filed. *Newman–Green, Inc. v. Alfonzo–Larrain,* —— U.S. ——, 109 S.Ct. 2218, 2222, 104 L.Ed.2d 893 (1989); *Sarnoff v.*

*American Home Products Corp.,* 798 F.2d 1075, 1078 (7th Cir.1986). Thus in order to invoke the jurisdiction of the federal court, Northern must allege that none of the sellers of the Lauhoff stock was a citizen of the same state as the Bunge Corporation on the date Northern filed the declaratory judgment action, and Northern must also allege that each seller's claim satisfies the amount in controversy requirement.

According to the jurisdictional statement in the parties' original briefs, the Bunge Corporation was a citizen of the state of New York at the time the suit was filed. Northern has appended to its supplemental jurisdictional brief an affidavit indicating that none of the 77 sellers of the Lauhoff stock was a citizen of the state of New York on July 2, 1986, the date that the declaratory judgment action was filed.

■ This does not resolve the matter, however, since Northern must also demonstrate that the amount in controversy requirement has been satisfied. The amount that each seller of Lauhoff stock had in controversy at the time the declaratory judgment action was filed can be determined by reference to the Schedule of Common Shareholders that is appended to the Stock Purchase Agreement. According to this schedule, a total of 2,490,000 shares of Lauhoff stock was sold to Bunge. Northern's complaint for declaratory relief indicates that Bunge sent a letter to Northern dated May 22, 1986, demanding a total refund of $648,000 pursuant to the price adjustment provision in the Stock Purchase Agreement. This is the same amount that was actually demanded by Bunge in the counterclaim it filed in response to Northern's complaint for declaratory relief. Bunge is therefore seeking a refund of $648,000 for the 2,490,000 shares, or approximately 26 cents per share. According to the Schedule of Common Shareholders several of the 77 sellers of the Lauhoff stock sold fewer than 500 shares of stock. Even if they had sold 500 shares, these former shareholders would have been able to allege an amount in controversy of only $130. In fact, only three of the 77 sellers of the Lauhoff stock sold enough shares to

establish an amount in controversy in excess of the $10,000 statutory minimum.[4] It therefore appears that while three of the individual sellers of the Lauhoff stock can satisfy both the citizenship and the amount in controversy requirements of diversity jurisdiction, 74 others cannot.

Some commentators and courts have advocated extending the doctrine of pendent jurisdiction to diversity cases to enable federal courts to take jurisdiction over parties who have an insufficient amount in controversy if they are involved in a transaction with other individuals whose claims satisfy the statutory requirements. These commentators argue that pendent jurisdiction is a judicially made doctrine that should not be confined to federal question cases merely because it was created in that context. Comment, *Pendent Jurisdiction in Diversity Cases*, 30 U.Pitt.L.Rev. 607, 624 (1969). See also *Beautytuft, Inc. v. Factory Insurance Association*, 431 F.2d 1122, 1128 (6th Cir.1970); Note, *Ancillary Jurisdiction and the Jurisdictional Amount Requirement*, 50 Notre Dame L.Rev. 346 (1974). This Circuit has rejected this proposal, however, as inconsistent with the Supreme Court's decision in *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973). *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075 (1986); *Hixon v. Sherwin–Williams Co.*, 671 F.2d 1005 (7th Cir.1982). In *Zahn* the Supreme Court held that the claims of each class member in a class action must meet the jurisdictional amount in controversy requirement. If such is the requirement where the citizenship of a single plaintiff can establish diversity for an entire class of plaintiffs, it should certainly be the requirement where the court must consider the citizenship of each represented plaintiff individually.

Northern in its capacity as representative must establish that it satisfies the conditions of the diversity statute. For purposes of that statute Northern is deemed to have the same citizenship and amount in controversy as each of the individuals it purports to represent. Since some of those individuals do not satisfy both requirements of the diversity statute, the district court did not have jurisdiction over this action.

■ Bunge urges this Court to invoke Fed.R.Civ.P. 21 to add, as parties to this suit, the three former shareholders of Lauhoff who do satisfy both requirements of the diversity statute. Rule 21 provides: "Parties may be dropped or added by order of the court on motion of any party or of its own initiative at any stage of the action and on such terms as are just." Bunge relies on *Mullaney v. Anderson*, 342 U.S. 415, 72 S.Ct. 428, 96 L.Ed. 458 (1952), to support this argument. In *Mullaney* the Supreme Court permitted the addition of two parties as plaintiffs to cure a perceived lack of standing. We have found no case in which Rule 21 has been used to add parties to cure a defect in statutory jurisdiction. More importantly, we have found no cases in which Rule 21 was invoked to add defendants who, upon their entry into the suit, would be subject to a judgment against them entered in their absence. *Mullaney* is therefore not applicable to this case and this is not a proper case in which to invoke Rule 21.

■ Even if Rule 21 could be used to add some of the former Lauhoff shareholders, their addition would undoubtedly raise the question of whether the suit could proceed in the absence of the other former shareholders. Paragraph 3 of the Stock Purchase Agreement explicitly states that if any liabilities arise out of the breach of the warranties connected with the sale of the Lauhoff stock "the purchase price for *all* of the shares of the Common Stock will be reduced *pro rata* accordingly on a dollar for dollar basis" (emphasis added). It is evident from this language that *all* of the former shareholders of Lauhoff would be parties without whom the action could not continue "in equity and good conscience" within the meaning of Rule 19(b). See *Hansen v. Peoples Bank of Bloomington,*

---

**4.** The Estate of Howard J. Lauhoff sold 1,500,-000 shares resulting in a total amount in controversy of $390,000. Floyd W. Brown and James G. Davis each sold 45,000 shares resulting in $11,700 in controversy each.

594 F.2d 1149 (7th Cir.1979); *Evergreen Park Nursing and Convalescent Home, Inc. v. American Equitable Assurance Co.*, 417 F.2d 1113 (7th Cir.1969); *Reconstruction Finance Corp. v. Teter*, 117 F.2d 716 (7th Cir.1941), certiorari denied, 314 U.S. 620, 62 S.Ct. 62, 86 L.Ed. 498 (1941); *Eastern Metals Corporation v. Martin*, 191 F.Supp. 245 (S.D.N.Y.1960).

## III. Conclusion

For all of the reasons discussed above we hold that the district court was without jurisdiction to decide this case. Accordingly, the judgment of the district court is vacated and the case is dismissed without prejudice.