Peter George Hoole **LOWSLEY– WILLIAMS, individually and as a representative of Certain Underwriters at Lloyd's London, and Argonaut Insurance Co. Ltd.; Bishopsgate Insurance Company, Ltd.; City Insurance Co., Ltd.; CNA Reinsurance of London, Ltd.; Delta Lloyd Insurance Co., Ltd.; Dominion Insurance Company, Ltd.; Instituto De Reasseguros Do Brasil; London & Edinburgh Insurance Co., Ltd.; Royal Belge Incendie–Reassurance S.A.; St. Katherine Insurance Co., Ltd.; "Winterthur" Swiss Insurance Co., Ltd., Plaintiffs,**

v.

**NORTH RIVER INSURANCE COMPANY and Talegen Holdings, Inc., as successor in interest to Crum & Forster, Inc., Defendants.**

**Civ. No. 93–5434 (WGB).**

United States District Court,
D. New Jersey.

May 3, 1995.

Claire T. Barile, Mendes & Mount, Newark, NJ, Robert M. Mangino, Jr., Mendes & Mount, New York City, for plaintiffs.

Joseph R. McDonough, Ribis, Graham & Curtin, Morristown, NJ, May Kay Vyskocil, Simpson Thacher & Bartlett, New York City, for defendants.

BASSLER, District Judge:

The plaintiffs, Peter George Hoole Lowsley–Williams ("Lowsley–Williams"), individually and as a representative of certain Underwriters at Lloyd's London ("Lloyd's") and nineteen London market insurance companies, brought an action pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, seeking a declaration of the rights and obligations of the parties under certain facultative reinsurance contracts. Plaintiffs additionally seek monetary damages for breach of contract. Plaintiffs allege diversity jurisdiction under 28 U.S.C. § 1332(a)(2). Defendants move to dismiss, based upon plaintiffs' failure to meet the burden of pleading all facts relevant to diversity jurisdiction by failing to allege the citizenship of each individual reinsurer.

## I. *BACKGROUND*

Defendant, North River, had seven reinsurance contracts underwritten by several syndicates at Lloyd's London. (Joint Stipulation of Facts, ¶ 78) ("Stipulation"). When the original insureds sought reimbursement from North River, North River in turn sought indemnification from the reinsurers (the syndicates of Lloyd's London). The syndicates then brought suit in this Court requesting declaratory judgment regarding their liability to pay North River pursuant to the reinsurance contracts. North River contends that this Court, due to a lack of diversity jurisdiction, does not have jurisdiction to declare whether plaintiffs must indemnify defendants.

The plaintiffs filed their complaint on December 9, 1993 and amended it on December 28, 1993 to name additional parties. Defendants have moved to dismiss the original complaint for lack of subject matter jurisdiction and have further opposed plaintiffs' Motion for Leave to File a Second Amended Complaint based on plaintiffs' alleged failure to correct the lack of subject matter jurisdiction.

In their complaint, plaintiffs made no allegations concerning citizenship of any of the Lloyd's members. In their Second Proposed Second Amended Complaint, plaintiffs modified their allegations of the citizenship of Lloyd's London and additionally alleged the citizenship of Lowsley–Williams, all Underwriters for syndicates subscribing to the policies at issue (explained, *infra*), and the various plaintiff insurance companies. Plaintiffs, however, do not allege the citizenship of each of the members in the syndicates subscribing to the policies at issue, maintaining that only the citizenship of the Underwriters and not of the individual members is critical in determining the existence of diversity jurisdiction.

The seven North River reinsurance contracts were each subscribed to by members in several syndicates at Lloyd's, as well as by several companies. (Stipulation, ¶ 78). Of the Lloyd's members subscribing to these contracts, several were and are citizens of the State of New Jersey. (Stipulation, ¶ 79).

The determination of diversity jurisdiction requires an understanding of the process of reinsurance at Lloyd's, which has been clarified by the Stipulation and Supplemental Joint Stipulation of Facts, provided to this Court in response to the Court's request. The following overview of that process is abstracted mainly from those two stipulations.

Lloyd's is an association that provides the physical premises and the administrative services and staff to enable insurance underwriters to carry on their business at the facilities. (Stipulation, ¶ 1). "Lloyd's of London is not an insurance company in the general sense. Rather, it is an exchange or a market where various individuals or groups bid on the right to insure a given risk." *Smith v. Lloyd's of London,* 568 F.2d 1115, 1117 n. 3 (5th Cir.1978) (citing Antony Brown, *Lloyd's of London* (1974)). Lloyd's takes no part in the business of underwriting; policies are underwritten *at* Lloyd's and not *by* Lloyd's. (Stipulation, ¶¶ 3–4). Thus, policyholders have no contractual relationship with Lloyd's. (Stipulation, ¶ 5).

The insurance policies underwritten at Lloyd's are underwritten by members of Lloyd's, referred to as "Names." (Stipulation, ¶¶ 7–8). Persons desiring to be Names must pay an entrance fee, keep certain deposits at Lloyd's, and meet several specific requirements, including the possession of a

certain degree of wealth, in order to become Names. (Stipulation, ¶¶ 10, 66). The maximum amount that each Name may underwrite is determined in relation to the Name's wealth, in addition to other factors. (Stipulation, ¶ 11). Since Names assume unlimited liability, Names are liable to the full extent of their personal wealth for any risks undertaken. (Stipulation, ¶ 12).

For any given contract, each Name is liable only for the percentage of the risk which that Name has agreed to underwrite and for no other portion of the risk assumed by any other Name. (Stipulation, ¶ 13). The holders of policies reinsured by Lloyd's Names thus enter into contractual relationships with the specific Names who have subscribed to the policies for the portion of the risk that each Name has agreed to underwrite. (Stipulation, ¶ 9).

In order to increase the efficiency of underwriting risks and to combine the resources of numerous underwriters, Names form groups called syndicates. (Stipulation, ¶ 16). "These syndicates ... are comprised of some 30,000 member-investors, sometimes called 'underwriters' or 'names,' who hope to share in any profit the syndicate might make." *Certain Interested Underwriters v. Layne*, 26 F.3d 39, 42 (6th Cir.1994) (quoting *Daly v. Lime Street Underwriting Agencies Ltd.*, 2 FTLR 277, 279 (Q.B.1987)). Syndicates are neither incorporated nor are they legal entities in and of themselves. (Stipulation, ¶¶ 17–18). There is no contractual relationship among members of a syndicate, between syndicates, or between the policyholder and a syndicate. (Stipulation, ¶¶ 19–20). Syndicates do not assume liability or underwrite risks; Names do. (Stipulation, ¶ 21).

Within each syndicate, a Managing Agent is responsible for the underwriting and management of a Name's business. (Stipulation, ¶ 30). The authority of the Managing Agent is either direct, through a contract entered into between the Name and the Managing Agent, or indirect, between the Managing Agent and the Member's Agent (who acts on behalf of the Name). (Stipulation, ¶ 32).

The Managing Agent—a partnership or limited company—designates one of its employees to serve as the Active Underwriter ("Underwriter") for the syndicate. (Stipulation, ¶¶ 34–35). The Underwriter is authorized to control the risks for each Name in the syndicate which the Underwriter represents, though no Underwriter is an express trustee over funds held on behalf of any Name. (Stipulation, ¶ 37; Tr., at 22). In addition, the Underwriter determines the conditions to which a risk will be subject and what percentage of a risk will be assumed by the syndicate on behalf of the Names. (Stipulation, ¶ 37). The Underwriter also determines what percentage of a risk each Name in the syndicate will assume. (Stipulation, ¶ 37). Thus, when the Underwriter accepts a percentage of a risk, he binds every Name in the syndicate to the full extent of the Name's share. (Stipulation, ¶ 39). When it comes time to pay a claim, the Underwriter's decision binds all the Names in the syndicate, but only the Names within that syndicate. (Stipulation, ¶ 39). Each Name's liability is determined by the individual policy and the Name's participating share in the syndicate. (Stipulation, ¶ 39). The agency between a Name and a Managing Agent is terminated when the Name ceases to be an underwriting member of Lloyd's. (Stipulation, ¶ 76).

## II. *DISCUSSION*

█ District courts have original jurisdiction where the matter in controversy exceeds $50,000 and is between citizens of different States, or citizens of a State and citizens of a foreign state. 28 U.S.C. § 1332(a)(1) & (2) (1994). When diversity jurisdiction is asserted as the basis of a federal claim under section 1332, diversity must be complete. *See Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806). The burden of showing complete diversity falls upon the party claiming section 1332 jurisdiction. *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 179, 56 S.Ct. 780, 780, 80 L.Ed. 1135 (1936).

Since the plaintiffs are asserting diversity jurisdiction, the burden of showing diversity falls upon them. Plaintiffs assert that in determining citizenship, the parties that should be included are North River, Talegen Holdings, and Crum & Forster for the defendants, and Lowsley–Williams for the plain-

tiffs. In essence, plaintiffs argue that so long as Lowsley–Williams is not considered to be a citizen of the same State as any of the three defendants, diversity is complete.

Defendants, advocating a method of diversity determination diametrically opposed to that proposed by plaintiffs, claim that all Lloyd's Names must be included in determining citizenship. Therefore, if any Name is a citizen of any State of which one of the defendants is a citizen, diversity is not complete and plaintiffs' claim of diversity jurisdiction under section 1332 must fail.

*A.  Determination of Diversity Jurisdiction*

■ Relying on *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 100 S.Ct. 1779, 64 L.Ed.2d 425 (1980), the plaintiffs argue that the relationship between the Underwriters and the Names is analogous to that of a trust. In evaluating the citizenship of the parties to a suit concerning a trust—because the trustee takes legal title to the trust assets, invests the assets for the benefit of the shareholders, and can sue and be sued in the capacity of trustee—the trustee is the only necessary and material party to the suit. *Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 464–65, 100 S.Ct. 1779, 1783–84, 64 L.Ed.2d 425 (1980). Similarly, plaintiffs insist that the Underwriters are the only necessary and material parties to this suit, as the Underwriters control the reinsurance process and therefore are responsible for investing the Names' funds.

In maintaining that only the Underwriters' citizenship carries any weight, plaintiffs argue that the Underwriters occupy the role of trustees with respect to the Names in a syndicate. Plaintiffs contend that the Names have delegated complete control over their money to the Underwriters. In addition, plaintiffs argue that Names can neither initiate nor control any litigation brought by the Underwriter. Thus, although the Underwriter does in fact bring suit both individually and as a representative of the Names in the syndicate—as Lowsley–Williams himself does in this very case—plaintiffs want this Court to consider only the citizenship of the Underwriters for diversity purposes.

The underwriting arrangement, however, is clearly distinguishable from a trust. Unlike a trust, the Underwriter of a Lloyd's syndicate does not hold legal title to any Name's assets, nor does the Underwriter sue or get sued in only an individual capacity. *See* George T. Bogert, Trusts §§ 30 at 92, 101 at 364, 125 at 450 (6th ed. 1987). Rather, the Underwriter sues or gets sued as a representative of all the Names in the syndicate as well as in an individual capacity. *International Ins. Co. v. Certain Underwriters at Lloyd's London,* 1991 U.S.Dist. LEXIS 12937 at *11 (N.D. Ill1991). Though they may not be individually-named parties to the suit, all Names in a syndicate are in fact parties to the suit because they are represented by the Underwriter who is a named party to the suit. Since the contracts being sued upon are between the individual Names and the policyholder (Stipulation, ¶¶ 21, 80)—and not between the Underwriter and the policyholder—the Names are necessary and material parties to the suit.

In addition, several other factors distinguish syndicates from trusts, the most notable of which is the level of control that a Name has vis-a-vis the syndicate as compared to the level of control that a beneficiary exercises vis-a-vis a trust. Although a Name lacks all control over the actions of the Underwriter, the Name does maintain a certain level of control over its money. Whereas a beneficiary often has no control in becoming a beneficiary of a particular trust, the Name selects which syndicate(s) to join. After joining a syndicate, the extent to which a Name will be liable within the syndicate is determined before the Underwriter signs a contract. Lastly, the Name presumably can withdraw membership in a syndicate whenever the Name so chooses, so long as no contracts are outstanding. Thus, the Name exercises control in the process of joining and remaining with or withdrawing from the syndicate, and determines the extent of liability. A beneficiary of a trust exercises much less control in the context of a trust. Additionally, in the context of the Lloyd's syndicates, there is no trustee, no trust corpus, and no trust beneficiary. *Cf.* George T. Bogert, Trusts § 1 at 1–5 (6th Ed.1987).

Furthermore, since the plaintiffs' analysis rests on an analogy to trust concepts, the Court must recognize the limits placed on federal jurisdiction and the general reluctance of the courts to extend jurisdictional exceptions, especially narrow exceptions such as that articulated in *Navarro.* "[T]he presumption in every stage of a cause [is] ... that it is without the jurisdiction of a [federal] court." *McSparran v. Weist,* 402 F.2d 867, 876 (3d Cir.1968), *cert. denied,* 395 U.S. 903, 89 S.Ct. 1739, 23 L.Ed.2d 217 (1969) (quoting *Lehigh Mining & Mfg. Co. v. Kelly,* 160 U.S. 327, 336–37, 16 S.Ct. 307, 311, 40 L.Ed. 444 (1895)). This case presents no compelling reason to undermine the general presumption against jurisdiction by extending the *Navarro* exception to apply to Lloyd's syndicates, which neither party alleges to be trusts and which are in fact not trusts. The Court will therefore not treat Lloyd's syndicates as trusts for determining diversity jurisdiction.

Plaintiffs alternatively argue that the Court should treat the Lloyd's syndicates as corporations, relying on *Carden v. Arkoma Assocs.,* 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990). According to *Carden,* however, only incorporated groups may be treated as legal persons for jurisdictional purposes; all other unincorporated entities must be likened to partnerships. *Carden,* 494 U.S. at 190, 110 S.Ct. at 1018 (quoting *Puerto Rico v. Russell & Co.,* 288 U.S. 476, 480, 53 S.Ct. 447, 448, 77 L.Ed. 903 (1933)).

The Lloyd's syndicates are not in fact corporations or partnerships. In drawing analogies to corporations and partnerships, a Lloyd's syndicate most resembles, though is not equivalent to, a limited liability partnership. "[A] Lloyd's syndicate is analogous to a limited partnership; however, unlike limited partners, syndicate members have unlimited partnership liability for their share of the syndicate's losses." *Certain Interested Underwriters v. Layne,* 26 F.3d 39, 42 (6th Cir.1994) (quoting *Daly v. Lime Street Underwriting Agencies, Ltd.,* 2 FTLR 277, 279 (Q.B.1987)). Nevertheless, the Court will explore the similarities and differences among a Lloyd's syndicate, a corporation, and a partnership.

If Lloyd's syndicates are treated as corporations, the citizenship of each individual syndicate is determined by the locus of incorporation and the principal place of business. *See* 28 U.S.C. § 1332(c)(1) (1994). While each individual syndicate is not incorporated, Lloyd's London was incorporated under United Kingdom law and its principal place of business—the facility at which underwriting occurs—is in London. Hence, under the corporation analogy, the citizenship of a Lloyd's syndicate is in England and the syndicate is consequently considered a foreign subject by American law for diversity purposes.

If, on the other hand, the syndicates are treated as partnerships, as defendants argue, citizenship is determined by the citizenship of all of the members, since the citizenship of an unincorporated entity or partnership is determined by the citizenship of every member. As a rule, "the Court will ... count every member of an unincorporated association for purposes of diversity jurisdiction." *Carden,* 494 U.S. at 199, 110 S.Ct. at 1023 (O'Connor, J., dissenting). *See also Northern Trust Co. v. Bunge Corp.,* 899 F.2d 591, 594 (7th Cir. 1990) ("[I]n cases involving such unincorporated business associations the relevant citizenship is that of the individual partners."). Thus, if a syndicate is treated as a partnership, then the syndicate is a citizen of every state in which a participating Name is a citizen.

*Carden,* a five-four decision, leaves a gap in diversity jurisdiction determinations of non-trust entities—either an entity is incorporated and will be treated as a legal person, or the unincorporated entity will be treated as a partnership. *Carden* may not come to terms with the wide array of non-traditional legal entities which currently exist and which are continuously being created, however. Furthermore, Justice O'Connor's dissent calls attention to the proper role which Congress should be filling (but has failed to fill) in providing the proper guidelines for jurisdictional determinations in the unincorporated, non-trust entity context. *See Carden,* 494 U.S. at 198–199, 110 S.Ct. at 1022–23 (O'Connor, J., dissenting). It is obvious that clearer, more appropriate guidelines must be

dictated for diversity jurisdiction determinations in contexts such as this, either by Congress or by the Supreme Court.

The issue of how to categorize Lloyd's syndicates for jurisdictional purposes has not yet been addressed by the Third Circuit. The Sixth Circuit, on the other hand, has addressed the issue of citizenship of a Lloyd's syndicate. *See Certain Interested Underwriters v. Layne,* 26 F.3d 39 (6th Cir. 1994) (holding that by applying the "real party in interest" test, in conjunction with Tennessee's law concerning suits involving principal and agent, only the Underwriters should be included for the purposes of diversity jurisdiction). While the decision of the Sixth Circuit is not binding on this Court, it does demand deference. *See Richards v. Local 134, Int'l. Bhd. of Elec. Workers,* 790 F.2d 633, 636 (7th Cir.1986).

But the decision in *Layne* is factually and legally distinguishable from this litigation. The *Layne* Court found that the Lloyd's Underwriters were agents for undisclosed principals and applied Tennessee and common law "that an agent for an undisclosed principal is personally liable on a contract." *Id.* at 43. Because Layne elected, in the counterclaim, to sue the Underwriters—not the Names—and because Tennessee law dictated that "[a] party who deals with such an agent may sue either the principal or the agent, but not both," the Underwriters, and not the Names, were found to be the real parties in interest to the suit. *Id.* (quoting *Holt v. American Progressive Life Ins. Co.,* 731 S.W.2d 923, 925 (Tenn.Ct.App.1987)). Since the parties here have stipulated that it is not the Underwriter but the Names who are personally liable on the contracts, it is therefore the Names who are the real parties in interest in this lawsuit. *See* Stipulation, ¶¶ 16–21, 39.

In other district courts, the question of jurisdiction of a Lloyd's London syndicate has been probed and resolved. While the decisions of the other districts do not bind this Court, the Court finds the reasoning and analysis of the other courts to be persuasive on this issue. The District Courts for the District of Maine, the Northern District of Illinois, and the District of Hawaii have thoroughly examined and analyzed the proper way to categorize a Lloyd's syndicate for diversity jurisdiction purposes. *See Bath Iron Works Corp. v. Certain Member Cos. of the Inst. of London Underwriters,* 870 F.Supp. 3 (D.Me.1994) (holding that citizenship of active underwriters and Names with Lloyd's London had to be considered for purposes of diversity jurisdiction); *International Ins. Co. v. Certain Underwriters at Lloyd's London,* 1991 U.S.Dist. LEXIS 12937 (N.D.Ill.1991) (examining the proper manner of determining Lloyd's syndicates and holding that citizenship of a Lloyd's syndicate is that of all of the participating Names); *Queen Victoria Corp. v. Insurance Specialists of Hawaii,* 711 F.Supp. 553 (D.Haw. 1989) (holding that the citizenship of Lloyd's is determined by that of all Names).

While, as the parties stipulate, Lloyd's of London is incorporated under the law of the United Kingdom, the Lloyd's corporation is not an insurer and is not a litigant in this action. *See Layne,* 26 F.3d at 41. The individual syndicates at Lloyd's are not incorporated, and "[i]t is not disputed that, under British law, the syndicates themselves are not legally recognized persons having their own citizenship, as are corporations." *BIW v. Institute of London Underwriters,* 870 F.Supp. at 4–5. Nor are they in any way similar to corporations: Whereas corporations are internally singular units, syndicates are simply an agglomeration of individuals (the Names).

That Lloyd's syndicates are not corporations does not make them partnerships. Nevertheless, syndicates are similar to partnerships in a few particular aspects, as described by the *International Insurance* Court:

> Like membership in a partnership, membership in a Lloyd's syndicate is personal and not transferable and terminates upon the death of the member. Members have unlimited personal liability, although only for each individual's share of the loss. Syndicates are like limited partnerships in that members have no management authority and cannot bind their fellow members or the syndicate.

*International Ins.*, 1991 U.S.Dist. LEXIS 12937 at *7–8.

Although "the traditional analysis for determining the citizenship of, for instance, a corporation or partnership is of limited assistance to the Court here," *BIW v. Institute of London Underwriters*, 870 F.Supp. at 4, current Supreme Court jurisprudence leads this Court to conclude that citizenship should be based upon all members of the syndicate, i.e., all Names. Additionally, the manner in which this suit is brought further supports this conclusion.

When Underwriters bring suits, they do so both as an individual and as a representative of the Names within the syndicate(s). *See International Ins.*, 1991 U.S.Dist. LEXIS 12937 at *11. The Underwriters do not bring suit on behalf of the syndicate. *Id.* at *10. The complaint refers to one plaintiff as "Peter George Hoole Lowsley–Williams, individually and as a representative . . ." Clearly, then, Lowsley–Williams represents both himself and the other Names in the syndicate. "[I]t has generally been held that federal courts must look to the individuals being represented rather than their collective representative to determine whether diversity of citizenship exists." *Northern Trust Co.*, 899 F.2d at 594. The *Carden* Court noted that the courts "have never held that an artificial entity [such as a Lloyd's syndicate], suing or being sued in its own name, can invoke the diversity jurisdiction of the federal courts based on the citizenship of some but not all of its members." *Carden v. Arkoma*, 494 U.S. at 192, 110 S.Ct. at 1019. The *Carden* Court flatly rejected the "contention that to determine [jurisdiction], for diversity purposes . . . the court may consult the citizenship of less than all of the entity's members." *Carden v. Arkoma*, 494 U.S. at 195, 110 S.Ct. at 1021.

Plaintiffs rely on several cases in support of their position that diversity jurisdiction can be based on the Underwriters and not the Names. In the Eastern District of Louisiana, there are two unpublished decisions which briefly address the presence of diversity jurisdiction in a case involving a Lloyd's syndicate. *See Collins v. Coastline Constr., Inc.*, 1992 WL 111203 (E.D.La.1992) (stating that diversity jurisdiction existed where all defendants were citizens of the State of Louisiana); *see also Collins v. Rodco Worldwide*, 1989 WL 117333 (E.D.La.1989). The *Collins* Courts, however, do not explain which Names and/or Underwriters they included in a calculation for diversity jurisdiction, other than to imply that no Name or Underwriter was a citizen of the State of Louisiana, while all defendants were. The parties in this case, in contrast, have stipulated that defendants are citizens of the State of New Jersey and some Names are also citizens of the State of New Jersey. Consequently, the Louisiana cases are not helpful.

Another case plaintiffs rely on is *Smith v. Lloyd's of London*, 568 F.2d 1115 (5th Cir. 1978). The *Smith* Court, however, while accepting that there was diversity jurisdiction, did not address how jurisdiction was determined and, in fact, dismissed the case for lack of personal jurisdiction. *Id.*

Plaintiffs also cite *Town Crier, Inc. v. Hume, Authorized Representative of Each and Every Member of Syndicate 553 of Lloyd's of London*, 907 F.2d 1140 (4th Cir. 1990), in support of their contention that diversity jurisdiction exists here. Because *Town Crier* is a case with no published opinion, however, this Court draws no conclusions or inferences from the circuit court's affirmance of the district court's decision.

The other three cases that plaintiffs argue in support of diversity jurisdiction all found that jurisdiction existed but fail to explain how it was determined. *See Rauch v. Underwriters at Lloyd's of London*, 320 F.2d 525 (9th Cir.1963) (finding that plaintiff was a citizen of Idaho and defendant Underwriters were aliens); *Informix Corp. v. Lloyd's of London*, 1992 WL 469802 (N.D.Cal.1992); *Caicos Petroleum Servs. Ltd. v. C.A. Parr Ltd.*, 1985 WL 2084 (N.D.Ill.1985) (finding that, where jurisdiction was uncontested, diversity jurisdiction existed).

None of the cases cited by the plaintiffs, *Collins v. Coastline, Collins v. Rodco, Smith, Town Crier, Rauch, Informix,* or *Caicos*, persuade the Court that diversity jurisdiction should be based on the Underwriters rather than the Names.

### B. Burden of Pleading Complete Diversity

 The plaintiffs must plead complete diversity in the complaint. Because citizenship is determined for a Lloyd's syndicate by the sum of the citizenship of all participating Names, the plaintiffs must have pled the citizenship of each Name participating in the North River reinsurance contracts in order for this Court to have diversity jurisdiction. The Original Complaint, the Proposed Second Amended Complaint, and the Second Proposed Second Amended Complaint all fail to state the citizenship of every Name in the syndicates that are parties to the seven contracts. Thus, plaintiffs fail to meet the burden of pleading complete diversity. *See McNutt v. General Motors Acceptance Corp.,* 298 U.S. 178, 179, 56 S.Ct. 780, 780, 80 L.Ed. 1135 (1936). Furthermore, the Supplemental Stipulation of Facts states that some of the Names who subscribed to the disputed contracts were and are citizens of New Jersey. As both North River Insurance Company and Talegen Holdings, Inc. are citizens of New Jersey, complete diversity is destroyed by the admissions in the Supplemental Stipulation of Facts. Plaintiff could not successfully plead complete diversity in any complaint.

### III. *CONCLUSION*

The defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction is granted. London Market Reinsurers' Motion for Leave to File a Second Amended Complaint is denied.