COMMONWEALTH EDISON COMPANY, an Illinois corporation, Plaintiff,

v.

WESTINGHOUSE ELECTRIC COMPANY, et al., Defendants.

No. 90 C 6593.

United States District Court, N.D. Illinois, E.D.

Feb. 28, 1991.

Andrew Butz, Gary Michael Elden, John R. McCambridge, Michael W. Early, Nancy Harriet Wilder, David E. Schoenfeld, Grippo & Elden, Chicago, Ill., for plaintiff.

William Thomas Cahill, Pope & John, Ltd., Chicago, Ill., Mindy J. Spector, James W. Quinn, Weil, Gothal & Manges, New York City, for defendants.

## MEMORANDUM OPINION

KOCORAS, District Judge:

This matter comes before the court on Plaintiff Commonwealth Edison Company's ("Edison") motion to remand this case to state court. For the following reasons, the motion is granted.

## BACKGROUND

The following are the facts as alleged by Edison, and for purposes of this motion these facts are taken as true. In 1967 and 1971 Edison contracted with Westinghouse Electric Company ("Westinghouse") to buy twenty four steam generators for three of Edison's nuclear generating stations, Zion, Byron, and Braidwood. Westinghouse represented to Edison that these steam generators would operate at specified energy output levels for forty years. In reliance on these representations, Edison paid hundreds of millions of dollars for the generators.

When Westinghouse sold Edison each of the generators, it was aware that one of the components of the generator, the Inconel 600 alloy heat exchanger tubing ("Inconel 600 tubing"), was incapable of lasting 40 years in an operating nuclear power plant environment. The most serious threat to the integrity of the Inconel 600 tubing was pure water stress corrosion cracking.

Edison alleges that Westinghouse actively concealed this knowledge from Edison and the rest of the nuclear power industry throughout the contract negotiation, construction, licensing, and start-up of the Edison nuclear generating plants in Zion, Byron, and Braidwood.

Edison further asserts that when problems began to appear with the Inconel 600 tubing, Westinghouse continued to deceive Edison and the rest of the nuclear power industry by offering different remedial and preventative measures as permanent cures for the tubing defect. All these measures were ineffective remedies, and some were

not even directed at the serious threat of pure water stress corrosion cracking.

Edison alleges that even when problems with Edison's operating plants finally forced Westinghouse to admit in 1985 that Inconel 600 tubing is susceptible to pure water stress corrosion cracking, Westinghouse insisted that the susceptibility of the tubing was a recently discovered phenomenon. However, Edison contends that its receipt in April 1990 of secret Westinghouse memoranda, written in the 1960s and early 1970s, revealed that Westinghouse had deceived Edison for over 20 years.

Count I of Edison's complaint alleges common law fraud against Westinghouse and four Westinghouse employees. Count II alleges that Westinghouse violated the Illinois Consumer Fraud and Deceptive Business Practices Act, Ill.Rev.Stat. ch. 121½ §§ 261–72. Finally, Counts III and IV allege that Westinghouse violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962.

On or about October 15, 1990, Edison filed suit in the Circuit Court of Cook County, Illinois. However, Westinghouse filed a motion to have the case removed to federal court on November 9, 1990, pursuant to 28 U.S.C. § 1441. Westinghouse asserted that the federal courts had original jurisdiction over the case pursuant to 28 U.S.C. § 1331 as the RICO claims "arise under the Constitution, law or treaties of the United States." 28 U.S.C. § 1331.

Now, Edison moves, pursuant to 28 U.S.C. § 1447(c), to remand this case to the Circuit Court of Cook County.

### DISCUSSION

In support of its motion, Edison contends that (1) this court does not have diversity jurisdiction over this case, (2) there is no federal claim against the Illinois defendants, and the RICO statute does not support this court's assertion of pendent party jurisdiction over the Illinois defendants, (3) without diversity or federal question jurisdiction, the defendants cannot remove this case under 28 U.S.C. § 1441(a) or (b), which permit removal only if the case is within a court's original jurisdiction, and (4) the de-

fendants cannot remove this case under 28 U.S.C. § 1441(c) because Edison's RICO claims are not separate and independent from Edison's state law claim against the nondiverse Illinois defendants.

In response, Westinghouse asserts that (1) removal of this case is permissible because Edison's RICO claim arises under laws of the United States, thereby making this action removable under 28 U.S.C. § 1441(b), and (2) jurisdiction over Edison's state law claims is proper under the doctrine of pendent jurisdiction.

Because the defendants assert that they rely on 28 U.S.C. § 1441(b) to remove this case to federal court, the issues this court must address are whether this court has original jurisdiction based on a right or claim arising under the Constitution, laws or treaties of the United States and whether this court has pendent jurisdiction over Defendants Lane and McKenzie.

1. Standard to Remand a Case

Edison moves to remand this case to state court pursuant to 28 U.S.C. 1447(c) which provides that "[a] motion to remand the case on the basis of any defect in removal procedure must be made within 30 days after the filing of the notice of removal under section 1446(a)." However, "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded ..." 28 U.S.C. § 1447(c). In determining a motion to remand, the district court is limited solely to the question of its authority to hear the case pursuant to the removal statute. *See* 14A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 2d § 3739 (West 1985). In the present case, the removal statute provides:

> (b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties, or laws of the United States shall be removable without regard to the citizenship or residence of the parties....

28 U.S.C. § 1441(b). The party seeking to preserve the removal, not the party moving for remand, has the burden of showing

that the requirements for removal have been met. *Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.1976). If the district court determines that it has no jurisdiction, it must remand the case to the state court from which it came. *Wright, Miller & Cooper, supra*, § 3739.

## 2. Original Jurisdiction

We find that this court has original jurisdiction over Edison's RICO claims, and thus, jurisdiction to hear Edison's claims against Westinghouse. To begin, district courts have original jurisdiction of all civil actions under the Constitution, treaties, or laws of the United States. 28 U.S.C. § 1331(a). Here, the RICO claims are brought pursuant to federal law, 18 U.S.C. § 1962(b) & (c). In addition, courts in this Circuit have consistently found RICO claims sufficient to confer federal jurisdiction. *See Nicolazzi v. Colombik*, 670 F.Supp. 823, 825 (N.D.Ill.1987); *Palumbo v. I.M. Simon & Co.*, 701 F.Supp. 1407, 1413 (N.D.Ill.1988); and *Fabrico Manufacturing Corp. v. Wilson Sporting Goods Co.*, 660 F.Supp. 601, 602 (N.D.Ill.1987).

## 3. Pendent Jurisdiction

Next, we must address whether this court can properly exercise pendent jurisdiction over Defendants Lane and McKenzie. Edison has no federal claims against these defendants to give this court subject matter jurisdiction. In addition, diversity jurisdiction does not exist, as they are Illinois residents and Edison is an Illinois corporation. Therefore, the only basis upon which we can exercise jurisdiction is pendent-party jurisdiction.

Pendent-party jurisdiction is "jurisdiction over parties not named in any claim that is independently cognizable by the federal court." *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989). Edison contends that *Finley* significantly limited the circumstances under which federal courts may exercise pendent-party jurisdiction. Prior to *Finley*, Edison contends, a federal court considering pendent jurisdiction must apply a two-step analysis. First, the court must satisfy itself that Article III permits

jurisdiction. Second, the court must determine whether Congress, in the statutes conferring jurisdiction, has expressly or by implication negated pendent jurisdiction. *Aldinger v. Howard*, 427 U.S. 1, 18, 96 S.Ct. 2413, 2422, 49 L.Ed.2d 276 (1976); *Owen Equipment & Erection Co. v. Kroger*, 437 U.S. 365, 373, 98 S.Ct. 2396, 2402, 57 L.Ed.2d 274 (1978). However, Edison asserts that after *Finley* a statute must also affirmatively grant pendent-party jurisdiction for the federal courts to exercise jurisdiction under that doctrine.

In *Finley* the United States Supreme Court found that because the Federal Tort Claims Act ("FTCA") does not contain an affirmative grant of pendent jurisdiction, "Congress by implication declined to extend jurisdiction to parties other than the United States under FTCA." *Finley*, 109 S.Ct. at 2009 n. 6. Edison goes on to argue that after *Finley* legislative silence is now construed to preclude pendent-party jurisdiction. Indeed, the Eighth and Second Circuits have adopted this interpretation of *Finley*. *See Alumax Mills Products v. Congress Financial Corp.*, 912 F.2d 996, 1006 (8th Cir.1990); *See also Staffer v. Bouchard Transp. Co.*, 878 F.2d 638, 643 n. 5 (2d Cir.1989) (after *Finley*, "pendent-party jurisdiction apparently is no longer a viable concept").

On the other hand, Westinghouse argues that courts in this circuit have held that the Supreme Court's holding in *Finley* is limited to the statute considered in that case, the FTCA. *See Carter v. Dixon*, 727 F.Supp. 478, 479 n. 1 (N.D.Ill.1990) ("The Court's rejection of pendent party jurisdiction in *Finley* was based on its interpretation of the particular statute conferring federal jurisdiction in that case, an analysis wholly inconsistent with the two-part test which has been employed in this circuit"). *See also Armstrong v. Edelson*, 718 F.Supp. 1372, 1376 n. 5 (N.D.Ill.1989) (found that *Finley* was decided based on Supreme Court's interpretation of the FTCA and applied two-part test to exercise pendent-party jurisdiction). In addition, Westinghouse argues that the Court in *Finley* upheld the two-step analysis estab-

lished in *Aldinger v. Howard,* 427 U.S. at 18, 96 S.Ct. at 2422, and *Kroger,* 437 U.S. at 373, 98 S.Ct. at 2402 by applying the test itself.

Finally, Westinghouse argues that Congressional amendments to 28 U.S.C. overrules any requirement *Finley* may have imposed to search statutes for an affirmative grant of pendent-party jurisdiction. The amendment Westinghouse refers to adds a new section which reads as follows:

§ 1367. Supplemental Jurisdiction

(a) Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder and intervention of additional parties.

150 Cong.Rec. H13304 (daily ed. Oct. 27, 1990). However, we noted that this amendment was enacted to effect only cases filed after December 1, 1990, and thus, can not be considered in our analysis of pendent-party jurisdiction at the time this case was filed.

Therefore, we return to this circuit for guidance concerning how to interpret *Finley.* While the Seventh Circuit has never ruled on whether to limit *Finley*'s application to the FTCA or to apply it to all pendent-party situations, the Seventh Circuit has called pendent-party jurisdiction an "embattled" concept. *Citizens Marine Natl. Bank v. United States Dept. of Commerce,* 854 F.2d 223, 226 (7th Cir.1988). In addition, the Seventh Circuit has noted that the Supreme Court disfavors pendent-party jurisdiction. *Heritage Bank & Trust Co. v. Abdnor,* 906 F.2d 292, 302 (7th Cir.1990); *Habor Insurance Co. v. Continental Bank Corp.,* 922 F.2d 357, 361 (7th Cir. 1990) (suggesting that very little pendent-party jurisdiction had survived *Finley.*

Also noting that "we share the concern that underlies *Finley* with judges' creating their own jurisdiction").

Moreover, though one additional court in this circuit has interpreted *Finley* to apply only to the FTCA, *Daly v. Demes & Sarovich,* No. 89 C 8634, slip op., p. 3, 1990 WL 205257 (N.D.Ill. December 4, 1990), at least three others have adopted the broader interpretation of *Finley* and denied pendent-party jurisdiction where there was no affirmative grant of authority. *See Microcomputer Workshops Corp. v. Mindscape, Inc.,* No. 89 C 2188, slip op., p. 3, 1989 WL 106684 (N.D.Ill. September 14, 1989) (finding that the *Finley* rationale applied to other jurisdictional grants as well and declining pendent-party jurisdiction absent an express grant); *See also Vallero v. Burlington Northern R. Co.,* 749 F.Supp. 908, 912 (C.D.Ill.1990); *Mechanical Rubber & Supply Co. v. American Saw and Manufacturing Co.,* 747 F.Supp. 1292, 1298 (C.D. Ill.1990); and *Constant v. Continental Telephone Co.,* 745 F.Supp. 1374, 1387 (C.D.Ill.1990) ("After *Finley,* federal courts have generally interpreted *Finley* to preclude pendent party jurisdiction unless there exists an independent jurisdictional basis for the pendent party").

 We believe *Finley* now requires an affirmative statutory grant of jurisdiction in order to validate pendent-party claims. This view is consistent with the Seventh Circuit's apparent apprehension about pendent-party jurisdiction after *Finley* and the number of cases in this circuit that have adopted the broader interpretation of *Finley* requiring an affirmative statutory grant of authority to exercise pendent-party jurisdiction. As the RICO statute does not contain an affirmative grant of jurisdiction within its terms, we find no authority to exercise pendent-party jurisdiction in this case. Accordingly, we remand this case to the Circuit Court of Cook County.