**Mary Jane ASHENDEN, et al., Plaintiffs,**

**v.**

**LLOYD'S OF LONDON,
et al., Defendants.**

**No. 96 C 0852.**

United States District Court,
N.D. Illinois,
Eastern Division.

Aug. 2, 1996.

Michael J. Hayes, Darren Steven Cahr, Gardner, Carton & Douglas, Chicago, IL, for plaintiffs.

Michael T. Hannafan, Michael T. Hannafan & Associates, Ltd., Chicago, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

CASTILLO, District Judge.

The plaintiffs in this action are current or former members ("Names") of Lloyd's of London—investors in insurance syndicates operating in the marketplace controlled by Lloyd's. This action is one of many arising from the recruitment of U.S. investors into Lloyd's during the roaring 1980s at a time when Lloyd's financial health was faltering due to many syndicates' underwriting of "long tail" risks—risks in which liability for an insured's earlier actions may surface years after those actions were taken (and years after the insurance policies covering those actions were written), e.g., asbestos- or pollution-related liability. The lawsuits between Lloyd's and its U.S. investors typically involve either Lloyd's efforts to collect funds to make good on the risks underwritten by those investors, or the investors' claims that Lloyd's fraudulently withheld information about the extent of the long-tail risks from them. This suit is in the latter category.

On December 28, 1995, the plaintiffs commenced this action against Lloyd's and several of its member's agents in the Circuit Court of Cook County, Illinois, alleging violations of the Illinois Securities Act and the Illinois Consumer Fraud and Deceptive Business Practices Act. On February 14, 1996, Lloyd's removed the action from the Cook County Circuit Court to the United States District Court for the Northern District of Illinois pursuant to 28 U.S.C. §§ 1332 and 1441. On March 21, 1996, the plaintiffs moved this Court to remand the action to the Circuit Court or, in the alternative, to abstain from hearing this case until an administrative proceeding brought by the Illinois Securities Department against the same defendants is resolved. For the following reasons, we hold that this Court has jurisdiction, deny the plaintiffs' motion for remand, and decline to abstain and stay this case.

## ANALYSIS

### I. Remand

■ The sole question in deciding a motion to remand is the district court's authority to hear the case under the relevant removal statute. *See Commonwealth Edison Co. v. Westinghouse Elec. Co.*, 759 F.Supp. 449, 451 (N.D.Ill.1991). The applicable statute here, 28 U.S.C. § 1441(a), states that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants." 28 U.S.C. § 1441(a) (1996). The party attempting to preserve the removal has the burden of showing that the requirements of removal have been met. *See Jones v. General Tire & Rubber Co.*, 541 F.2d 660, 664 (7th Cir.1976). The case should be remanded if there is doubt to the right of removal. *Id.*

■ The removability of a case is determined from the record as a whole. *See Kennedy v. Commercial Carriers, Inc.*, 739 F.Supp. 406, 409 (N.D.Ill.1990) (citing *Oglesby v. RCA Corp.*, 752 F.2d 272, 277–78 (7th Cir.1985)). Therefore, the Court considers affidavits and other party submissions in de-termining whether or not it has jurisdiction over this case.

In seeking remand, the plaintiffs make two arguments: first, that the defendants' removal petition was untimely; and second, that removal was not proper because this Court does not have original jurisdiction over this suit. We address each argument in turn.

### A. Timeliness of the Removal Petition

■ Under 28 U.S.C. § 1446(b), the removal statute, a defendant seeking to remove a case to federal court must file a removal petition within thirty days after receiving the complaint "through service or otherwise." 28 U.S.C. § 1446(b) (1996). Here, Lloyd's filed its petition to remove on February 14, 1996, less than thirty days from January 16, 1996, the day it says it first got the complaint. The plaintiffs claim that the petition is untimely because Lloyd's actually received the complaint before January 16.

The plaintiffs assert that Lloyd's received the complaint on January 11, 1996, through its agent, the Chicago law firm of Peterson & Ross. Peterson & Ross represents various syndicates that operate in Lloyd's insurance marketplace, which are often sued mistakenly under the name "Lloyd's of London." Accordingly, Peterson & Ross docket clerks routinely copy pleadings naming "Lloyd's of London," and they did so here, copying the complaint in this case on January 11. Lloyd's has submitted, however, and the plaintiffs have not refuted, that Peterson & Ross does not represent Lloyd's of London itself (the defendant in this lawsuit), only various Lloyd's syndicates. The two are legally distinct, and the plaintiffs have presented no evidence that the syndicates or their attorneys are the agents of Lloyd's for the service of process. In addition, an attorney at Peterson & Ross has testified by way of affidavit that Peterson & Ross did not forward the complaint to Lloyd's itself, or to Lloyd's Chicago lawyers, the law firm of Lord, Bissell & Brook. The plaintiffs' assertion that Lloyd's received the complaint through Peterson & Ross has been refuted and their untimeliness argument must fail.[1]

---

1. The plaintiffs also note that Lord, Bissell & Brook attorneys first became aware of the com-

## B. Diversity Jurisdiction

The plaintiffs' second argument, that Lloyd's is a citizen of Illinois and thus there is no federal diversity jurisdiction, requires more attention. In removing this case to federal court, Lloyd's cited 28 U.S.C. § 1332 (diversity jurisdiction) as the jurisdictional basis for removal. We now consider whether this jurisdictional basis is indeed present here.

The original jurisdiction of federal district courts under § 1332 is limited to cases between, *inter alia*, citizens of different states, or of a state and a foreign state, in which the "matters in controversy exceed[ ] $50,000." 28 U.S.C. § 1332(a)(1)–(a)(2) (1996). Section 1332 has been interpreted to require "complete diversity," that is, each and every defendant must have different citizenship from each and every plaintiff. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 187 (1990) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806)). It is undisputed that the amount in controversy in this case exceeds $50,000. At issue is whether there is complete diversity of citizenship between the parties.

The individual plaintiffs in this case are all Illinois citizens. The only organizational plaintiff, Illinois Names Association, Inc., is an Illinois corporation and thus likewise an Illinois citizen. The member's agents defendants are all English corporations with their principal places of business in England, and therefore are undisputedly English citizens. The remaining defendant is the entity known as Lloyd's of London.[2]

Because all of the plaintiffs are Illinois citizens, and all the defendants except Lloyd's are acknowledged English citizens, the existence of diversity jurisdiction depends on whether Lloyd's is properly considered a citizen of Illinois. That issue, in turn,

hinges on whether Lloyd's should be considered a corporation for diversity purposes.

■ A corporation is deemed to be a citizen of (1) any state in which it is incorporated, and (2) the state where its principal place of business is located. 28 U.S.C. § 1332(c). By contrast, unincorporated associations do not have a legal identity that is separate from that of their constituent members or partners for jurisdictional purposes. Accordingly, non-corporations "are not considered citizens of any state for diversity purposes. Consequently, in cases involving such unincorporated associations, the relevant citizenship is that of the individual partners." *Northern Trust Co. v. Bunge Corp.*, 899 F.2d 591, 594 (7th Cir.1990) (citing *Great S. Fire Proof Hotel Co. v. Jones*, 177 U.S. 449, 20 S.Ct. 690, 44 L.Ed. 842 (1900) (partnerships); *Carden v. Arkoma Assocs.*, 494 U.S. 185, 110 S.Ct. 1015, 108 L.Ed.2d 157 (1990) (limited partnerships)). See also *Chapman v. Barney*, 129 U.S. 677, 682, 9 S.Ct. 426, 427–28, 32 L.Ed. 800 (1889) (joint stock companies, another type of unincorporated association, likewise held to be citizens of every state of which any company member is a citizen).

Indeed, the Supreme Court held in *Carden* that the *only* entity that has its own citizenship, rather than that of its members, is a formal, *de jure* corporation: "We have often had to consider the status of artificial entities created by state law insofar as that bears upon the existence of federal diversity jurisdiction.... While the rule regarding the treatment of corporations as 'citizens' [in their own right] has become firmly established, we have ... just as firmly resisted extending that treatment to other entities." *Id.*, 494 U.S. at 187, 189, 110 S.Ct. at 1017, 1018. This is essentially a bright line rule: a corporation has its own citizenship; other entities do not. If Lloyd's is a corporation, it

plaint during a deposition in another matter on January 12, 1996. The thirty days do not run from the time of the defendant's first knowledge of the complaint, however, but from the defendant's receipt of a copy of the complaint. *See* 28 U.S.C. § 1446(b) (1996); *Roe v. O'Donohue*, 38 F.3d 298, 303 (7th Cir.1994) (citing legislative history of § 1446(b) and *Ardison v. Villa*, 248 F.2d 226 (10th Cir.1957)).

2. The insurance syndicates that operate *within* Lloyd's of London, which are discussed below, have been determined to be unincorporated associations with citizenship determined by all of their members, even those not involved in underwriting a particular contract. *See Transamerica Corp. v. Reliance Ins. Co.*, 884 F.Supp. 133, 139 (D.Del.1995); *Lowsley–Williams v. North River Ins. Co.*, 884 F.Supp. 166, 172 (D.N.J.1995). No syndicates are defendants here.

is not a citizen of Illinois, *see infra*, and thus this Court has diversity jurisdiction over this action. If, on the other hand, Lloyd's is properly considered a non-corporation, its citizenship is that of its members, some of whom (like the plaintiffs) are Illinois citizens. In that case, there is no diversity. The question is thus, is Lloyd's a corporation?

*What is This Thing Called Lloyd's?*

■ There is no doubt that Lloyd's is, at least on its face, a corporation. Lloyd's has submitted a copy of an 1871 act of Parliament, the Lloyd's Act, which created the corporation of Lloyd's as a successor to the former unincorporated association that had been known by the same name. Nevertheless, it is by no means obvious that this ends the inquiry. A look at the actual structure and operation of Lloyd's reveals a complex entity with several features that do not comport with the description of a typical U.S. corporation, and provides some support for the plaintiffs' contention that Lloyd's "is not a 'corporation' in any traditional sense of the word," Pet. for Remand ¶ 19. Accordingly, this Court has undertaken a comprehensive analysis of the proper designation for the entity known as Lloyd's.[3]

The structure of the insurance underwriting entity commonly referred to as Lloyd's of London is arachnoid. Originating in the late 17th century in a London coffee house run by Edward Lloyd where ship owners, captains, and insurance underwriters gathered to buy and sell marine insurance, Lloyd's is a "self-regulated" insurance market, a non-profit organization funded by its members. *See McAleer v. Smith*, 791 F.Supp. 923, 931 (D.R.I.1992) (giving an overview of Lloyd's history). The current structure of Lloyd's was established by the English Parliament through the Lloyd's Act of 1871 and five amendments to the Act, the most recent of which was passed in 1982 (collectively, the "Lloyd's Act"). Lloyd's of London as a whole consists of three separate but related entities: the Corporation or Society of Lloyd's, the Market, and the Council of Lloyd's. Ex. B to Pl.'s Reply in Supp. of Mot. to Remand, Affidavit of Richard Joseph Astor, at 5.

The Corporation does not participate directly in any underwriting or reinsurance activities. Instead, the Corporation creates a place (the Market) in which underwriting activities take place. *Id.* at 5–6. Under the Lloyd's Act, the Corporation has four objects:

1) The carrying on by its members of the business of insurance of every description, including guarantee business.

2) The advancement and protection of the interests of its members in connection with the business carried on by them as members and in respect of shipping and cargoes and freight and other insurable property or insurable interests or otherwise.

3) The collection, publication and diffusion of intelligence and information.

4) The doing of all things incidental or conducive to the fulfillment of the foregoing.

Lloyd's Act ¶ 10. The Corporation is a "hollow shell" advancing the interest of maintaining the Market. Astor Aff. at 6. The Corporation also serves to some degree as a gatekeeper to the Market: only those who are members of Lloyd's (or "Names") can invest in the insurance syndicates that trade through Lloyd's. *Id.* at 12. Investors must enter into a membership contract (called a "General Undertaking") with the Corporation upon becoming a member. *Id.* at 11. Thus, the Corporation is in contractual privity with all its members. Unlike many corporations, the Corporation of Lloyd's issues no stock, nor do members of Lloyd's have any direct voting rights in the Corporation

---

**3.** Federal case law does not appear to speak to this issue. A search of an electronic database reveals only two federal cases founded on diversity jurisdiction in which Lloyd's itself was a party (as opposed to a member or a syndicate operating through Lloyd's being the real party in interest). *See Shell v. R.W. Sturge, Ltd.*, 55 F.3d 1227 (6th Cir.1995); *Hugel v. Corporation of Lloyd's*, 999 F.2d 206 (7th Cir.1993). Neither case discusses the issue of Lloyd's' citizenship. At least one federal district court has described Lloyd's as an unincorporated association: the basis for this description is unclear. *See Luce v. Lloyd's of London*, 868 F.Supp. 625, 625 (D.Vt. 1994).

(see the description of the Council of Lloyd's, below). Instead, the only direct benefit derived by Lloyd's members is the right to participate in its Market. *Id.* at 12.

The Market is the segment of Lloyd's within which the underwriting and reinsurance actually takes place. The members provide capital and enter into insurance contracts by joining "syndicates," unincorporated associations that are the primary actors operating in the Market. Only by becoming a member may an individual underwrite through a Lloyd's of London syndicate. *Id.* A member is severally liable for his or her share of each underwriting endeavor to the full extent of his or her assets. *Id.* at 12–13. Presumably, a member also receives a proportionate share of the premiums collected or profits that may accrue. The syndicates are controlled by "managing agents," most often English corporations, which act as agents of both the Corporation of Lloyd's and the members. The managing agent decides which policies the syndicate should underwrite, sets the premium rates, collects premiums and pays claims to the insured. Ex. A. to Brief of Lloyd's in Opp. to Pl'.s Pet. for Remand, Declaration of Nicholas Paul Demery, ¶ 5.

"Member's agents" recruit new investors and assist them in becoming members. *Id.* ¶ 6. Upon becoming a member, an investor enters into a membership contract (called a "General Undertaking") with the Corporation, and delegates to the member's agent the authority to conduct his or her Lloyd's of London activities, including deciding which managing agents, and therefore what syndicates, the member will join. Astor Aff. at 11–12. Both the managing agents and the member's agents receive commissions from the members for their services. Outside of regulating the membership application process and securing the execution of the General Undertaking and any other attendant agreements requiring the member to delegate authority to the member's and managing agents, the Corporation is not directly involved in those agency relationships or the underwriting activity of the syndicates.

The third aspect of Lloyd's, the Council, was created by the 1982 amendment to the Lloyd's Act to regulate the Market and manage the Corporation. *Id.* at 7. (There is no indication in the record of what body, if any, managed the Corporation before the creation of the Council.) The Council creates the bylaws, regulations and codes of conduct that govern the Corporation and those who participate in the Lloyd's market (the members, the managing agents and the member's agents). Demery Decl. ¶ 2. The Council is mostly made up of members of Lloyd's who are elected by the other members but also includes others nominated by the Council members and approved by the Bank of England. Astor Aff. at 8. The Council has the sole power to regulate Lloyd's internal affairs; no governmental agency has the power to regulate Lloyd's. *Id.* at 6.

Pursuant to the General Undertaking, members must pay an initiation fee and yearly dues to the Corporation. The fees go to a "Central Fund" that the Council may tap to put cash into the market as needed. Additionally, members must provide a "Deposit Trust Deed" (DTD), which is generally a letter of credit payable to Lloyd's from an approved bank. *Id.* at 19. The Corporation, as trustee of the DTD, may draw upon that credit to pay an individual member's share of a claim should the premiums not be able to cover them. *Id.* In this way, the Corporation appears to occasionally take on the role of enforcement officer or debt collector on behalf of the syndicates. The managing agents also have the power to draw upon a member's personal reserves to meet the obligations of a syndicate. *Id.*

Based on the above features of Lloyd's, it is certainly an unusual corporation, if indeed it should be considered one at all. We agree with the plaintiffs' contention that it does not resemble a typical U.S. stock corporation. Nevertheless, Lloyd's does have many of the traditional earmarks of a corporation.

A corporation has been defined as "an entity separate from its owners ... an association of persons to whom the sovereign has offered a franchise to become an artificial, judicial person, with a name of its own." 18 AM.JUR.2D *Corporations* § 1 (1985). Lloyd's obviously has the grant of a separate identity by a sovereign and a name of its own.

Lloyd's Act ¶ 3. Other common attributes of a corporation include "the capacity of perpetual succession, the power to sue or be sued in the corporate name; to acquire or transfer property and do other acts in the corporate name; to purchase and hold real estate; to have a common seal; and to make bylaws for internal government." 18 Am.Jur.2d *Corporations* § 1 (citing Blackstone). Lloyd's has all of these attributes. It has the ability to contract, as evidenced by the fact that U.S. courts have enforced the forum selection provisions of Lloyd's General Undertaking contracts, thus implicitly recognizing Lloyd's capacity to enter into such contracts. *See, e.g., Bonny v. Society of Lloyd's,* 3 F.3d 156, 158–62 (7th Cir.1993), *cert. denied,* 510 U.S. 1113, 114 S.Ct. 1057, 127 L.Ed.2d 378 (1994); *Roby v. Corporation of Lloyd's,* 996 F.2d 1353, 1362–63 (2nd Cir.), *cert. denied,* 510 U.S. 945, 114 S.Ct. 385, 126 L.Ed.2d 333 (1993). United States courts have similarly recognized Lloyd's ability to be sued, *see id.,* and to bring suit, *see, e.g., Corporation of Lloyd's v. Lloyd's U.S.,* 831 F.2d 33 (2d Cir.1987), *Lloyd's of London v. Kelly,* 785 F.2d 276 (11th Cir.1986), in its own name. The Lloyd's Act grants Lloyd's perpetual succession and a common seal, the power to transfer property, and to purchase and hold real estate. Lloyd's Act ¶ 3. And, as noted above, the Council of Lloyd's has the power to make by-laws for Lloyd's. Astor Aff. at 7.

Lloyd's thus has many of the common attributes of a corporation. The plaintiffs point out that it has issued no stock and that the members receive no direct benefit from their membership, but neither point is dispositive of Lloyd's status as a corporation. The general class of corporations includes many species beside the ordinary for-profit stock corporation. *See* 18 C.J.S. *Corporations* § 5 (1992). Membership corporations, for example, defined as a "species of corporation in which ... [o]wnership is through the membership charter or agreement rather than the usual issuance of stock," Black's Law Dictionary 1058 (6th ed. 1990), appear to exhibit many of the same peculiarities present in Lloyd's structure. Members of a not-for-profit corporation are deemed the owners of the corporation even though they receive no pecuniary benefit from ownership.

*See* 18 C.J.S. *Corporations* § 305 (1993). Finally, a corporation may exist solely for the purpose of promoting interaction and the resolution of shared concerns among its members. *See Schroeder v. Meridian Improvement Club,* 36 Wash.2d 925, 221 P.2d 544, 545–46 (1950). Thus, Lloyd's stated purpose and function of assisting its members in the underwriting of insurance do not prevent it from being considered a corporation.

More important than any of these factors, however, are our Supreme Court's decisions indicating that the citizenship of business entities must be determined by the simple fact of legal incorporation or the lack thereof, rather than the nature or attributes of the entity in question. Thus, no matter how corporation-like an entity may be in its structure or operations, if it is not incorporated, the Supreme Court has generally refused to accord it the separate citizenship enjoyed by corporations under 28 U.S.C. § 1332(c). *See United Steelworkers v. R.H. Bouligny, Inc.,* 382 U.S. 145, 149–51, 86 S.Ct. 272, 274–75, 15 L.Ed.2d 217 (1965) (union was not a corporation and thus did not have separate citizenship under 28 U.S.C. § 1332(c), despite many possibly sound arguments as to why treatment as a corporation would be appropriate); *Great Southern Fire Proof Hotel Co. v. Jones,* 177 U.S. 449, 456–57, 20 S.Ct. 690, 693, 44 L.Ed. 842 (1900) (although state of Pennsylvania considered limited partnership association to be a citizen of the state, it had no separate citizenship for purposes of diversity jurisdiction); *Chapman v. Barney,* 129 U.S. 677, 682, 9 S.Ct. 426, 427–28, 32 L.Ed. 800 (1889) (although joint stock company was invested by the state of New York with many corporate attributes, including the right to sue and be sued in its own name, it did not qualify as a corporation under 28 U.S.C. § 1332(c)); 13B Charles A. Wright, Arthur R. Miller, & Edward H. Cooper, Federal Practice and Procedure § 3630 (2d ed. 1984) (rule granting separate citizenship only to incorporated entities "is followed even when state law and Federal Rule [of Civil Procedure] 17(b) permit the association to sue or be sued as an entity and declare that it is to be treated as if it were a corpora-

tion"). *But cf. Puerto Rico v. Russell & Co., Sucesores, S. en C.,* 288 U.S. 476, 481–82, 53 S.Ct. 447, 449, 77 L.Ed. 903 (1933) (sociedad en comandita, a type of Puerto Rican business entity unknown to common law, was recognized as a juridical person at civil law and thus had its own citizenship, not that of its members).

█ This approach, which focuses on the literal and legal meaning of the term "corporation" as it is used in § 1332(c), implies that the converse would be true as well: that no matter how unlike a tradition corporation an entity may look, if it is duly incorporated, it may take advantage of the separate citizenship provision of § 1332(c). "To paraphrase Gertrude Stein, for purposes of diversity jurisdiction a corporation is a corporation is a corporation." *Cote v. Wadel,* 796 F.2d 981, 983 (7th Cir.1986) (law firm that was a professional corporation was to be treated as any other corporation for diversity jurisdiction purposes, even though it did not have the "defining characteristics" of a corporation, such as limited liability and perpetual succession). *See also Mutual Serv. Cas. Ins. Co. v. Country Life Ins. Co.,* 859 F.2d 548, 550 (7th Cir.1988) (mutual insurance company was a corporation for diversity purposes where Minnesota law provided that such companies were incorporated under Minnesota law). Thus, to defeat Lloyd's corporate citizenship, the plaintiffs would have to attack the validity of Lloyd's assertion that is duly incorporated under the laws of England. This they have not done. To the contrary, the first paragraph of their complaint states that "Lloyd's became a corporation by an Act of the British Parliament in 1871." Compl. ¶ 1. The complaint goes on to note that "Lloyd's principal place of business is at No. 1 Lime Street, London, EC3M 7HA, England," *id.,* thus eliminating any doubt as to Lloyd's English citizenship.[4]

Instead of focusing on the validity of Lloyd's corporate status, the plaintiffs make two arguments: first, that Lloyd's "is not a 'corporation' in any traditional sense of the word," Pet. for Remand ¶ 19; and second, that Lloyd's has upon occasion said that it is an Illinois corporation, and it should be estopped from denying those statements now. The first argument we have disposed of above. It is the legal form of the entity, not whether it comports with "traditional" notions of what a corporation is, that determines its eligibility under § 1332(c) for treatment as a corporation. *See Cote,* 796 F.2d at 983.

As for the second argument, Lloyd's explains that the occasions on which it has represented itself as an Illinois corporation are the result of errors or acknowledged misstatements. On one occasion, an attorney for Lloyd's filed a standard form complaint in the local Municipal Court erroneously alleging that Lloyd's was an Illinois corporation. The attorney has submitted an affidavit detailing his mistake and averring that the allegation was simply an oversight, one which was irrelevant to any party's interests or arguments in the case. Quist Aff. ¶ 3. Lloyd's also admits that it has filed electronically generated annual financial forms with the Illinois Department of Insurance which list Lloyd's as a corporation organized under Illinois law. Lloyd's explains that this is the result of a flaw in the software, which requires that the name of a U.S. state be entered in the particular field and does not allow the field to be left blank. Kochan Aff. ¶ 3. The plaintiffs have not come forward with any evidence to rebut Lloyd's explanations: indeed, they abandoned their estoppel argument in their reply brief. We find that Lloyd's is not estopped from representing that it is not a citizen of Illinois.

In summary, we find that the defendant in this case, Lloyd's of London, should be considered a corporation for purposes of analysis under § 1332, and that it is a citizen only of England and not of Illinois. Accordingly, we reject the plaintiffs' argument that the jurisdictional basis for the removal petition is lacking, and hold that we have subject matter

---

4. Lloyd's, as a foreign or alien corporation, is treated the same as a domestic corporation for diversity purposes, and is considered a citizen both of its country of incorporation and the state or foreign country in which its principal place of business is located. *See Rouhi v. Harza Engineering Co.,* 785 F.Supp. 1290, 1292 (N.D. Ill1992) (comprehensive analysis of the application of § 1332(c) to alien corporations).

jurisdiction over this case pursuant to 28 U.S.C. § 1332.

## II. Abstention

█ As a fallback position in the event that we found that this case was properly removed, the plaintiffs have asked the Court to abstain from considering the case and to stay the case pending the outcome of the Illinois Securities Department administrative proceeding against Lloyd's currently before the office of the Secretary of State of Illinois. The plaintiffs contend that the ruling there will speak to "the central issue of this case, namely whether the actions and activities of Lloyd's" violate the Illinois Securities Act.[5] Pet. for Remand ¶ 24. Plaintiffs cite no cases or other facts to support their request for abstention, but merely argue that abstention would preserve judicial resources, avoid duplication of effort, and limit the risks of piecemeal litigation.

Federal courts ordinarily have a "virtually unflagging obligation" to exercise the jurisdiction given them. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817, 96 S.Ct. 1236, 1246, 47 L.Ed.2d 483 (1976). The mere "pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Id.* (internal quotation marks omitted). The *Colorado River* doctrine is prudential in nature, and the determination of whether to defer proceedings based on concurrent state litigation is within the sound discretion of the trial court. *See Will v. Calvert Fire Ins. Co.*, 437 U.S. 655, 665, 98 S.Ct. 2552, 2558–59, 57 L.Ed.2d 504 (1978).

The Court finds that, on balance, the competing considerations favor denying the request for abstention. We recognize that the state administrative proceeding may ulti-mately resolve some of the issues presented in this case, and that the rulings there would be binding on Lloyd's. The plaintiffs candidly admit that the administrative proceeding was the catalyst for the filing of this case, "as a means of preserving plaintiffs' legal rights pending the outcome of that proceeding," *id.* ¶ 25, and they essentially seek to piggyback their claim for damages on the investigation being undertaken in the state action. While we appreciate the plaintiff's desire to avoid expensive discovery if possible, we cannot permit the plaintiffs the luxury of a stay in a case that they themselves brought, simply so that they can sit on their hands and let someone else do the work. Indeed, it is doubtful that a plaintiff may ever seek abstention in order to delay the prosecution of his or her own claim. Lloyd's has filed a motion to dismiss this case on the grounds that any suits against it must be brought in England pursuant to the General Undertaking, and argues that it is "entitled to a disposition of this matter." We agree that the plaintiffs' mere desire to reap the fruits of the state's investigations is insufficient to warrant delaying further proceedings in this case, especially in light of Lloyd's motion to dismiss. Accordingly, we deny the request for abstention.[6]

## CONCLUSION

For all of the foregoing reasons, we deny the plaintiffs' petition to remand or, in the alternative, to abstain pending the outcome of the state administrative proceeding. The defendants are hereby given until August 16, 1996 to file a memorandum in support of their pending motion to dismiss. The plaintiffs' response will be due on September 6, 1996. The defendants' reply brief, if any, will be due on September 13, 1996. No

---

5. We note that although the bulk of the plaintiffs' claims in this action allege violations of the Illinois Securities Act of 1953, 815 ILCS § 5/13 (1995), *see* Compl.Counts I–VIII, the complaint also alleges violations of the Illinois Consumer Fraud and Deceptive Business Practice Act, 815 ILCS § 505/2 (1995). Compl.Count IX. The precedential value of a ruling issued in the State's administrative proceeding on this latter claim is unclear.

6. We also note that the briefing and determination of Lloyd's' motion to dismiss is likely to take several months, resulting as a practical matter in a delay during which the state administrative proceeding may advance. If, after the ruling on the motion to dismiss, there has been substantial progress and the administrative proceeding appears close to a final order, the plaintiffs may seek leave to renew their request for a temporary stay.

extensions of time will be granted. The Court will rule by mail.